Mr. Sinzak. May it please the court, Jerry Sinzak, appearing on behalf of the United States. The district court wrongly concluded that the ALJ committed error at steps two and three of his analysis. With respect to step two, there is no requirement that an ALJ conduct a credibility assessment provided that the ALJ finds at least one severe impairment. As this court has said many times, the step two inquiry is a threshold inquiry, and that threshold inquiry, or that threshold is surpassed provided that the ALJ finds one severe impairment. And that is exactly what the ALJ did here, and as this court has reasoned in cases like Castile, there really is no reason why an ALJ should perform a credibility assessment at step two. The ALJ is required to move on and will conduct that credibility assessment later, and will also consider all of the claimants' impairments, whether severe or non-severe, at later steps, as again, the ALJ did here. So there is absolutely no reason to require an ALJ to conduct a credibility assessment at that point. So although there was no error here, even if there was error, that error was clearly harmless. Again, as this court has said in cases like Castile, Arnett, and Henke, there is no error at step two, provided the ALJ finds that there is at least one severe impairment. And again, that's exactly what the ALJ did here. Mr. Sinsnack, I'm going to ask you a question that you do not have to answer. I've been doing this not as, well, I've been doing it for a long time, at least at some level in the federal courts. I've never seen an appeal by the Social Security Commissioner before. Yes, Your Honor, it is unusual for us to be the appellant. Why this one? Yes, and I think in this case... You don't have to answer. Right. I think I'll do my best, but in this case, I think we've, it came upon one where the and our views, and errors that will require the ALJ in this case, and potentially ALJs in further cases to conduct unnecessary analysis, potentially confusing analysis, at steps two and steps three. And so that's really our foremost concern here, is to make sure that those legal errors that we believe occurred are reversed, and so that going forward, ALJs in this district and ALJs throughout this circuit are not required to perform unnecessary credibility determinations and other unnecessary analyses. So if I might, then, as I said, with step two, there was no error here, and certainly there was, any error was harmless. And then with respect to step three, again, the district court wrongly concluded that the ALJ did not consider all of Ms. Kerbin's impairments. That's not a fair reading, or a common sense reading of his opinion. The ALJ considered specifically all of the impairments at step two, and mentioned them, but then of course conducted a very thorough analysis of each impairment, and discussed all the evidence related to those impairments at step, at the RFC step. So the idea that at step three, that he didn't consider all of his, all of the impairments is simply not a fair reading of his, of his opinion. And moreover, I think this is an unusual case, as the, maybe, perhaps not an unusual case, but notable about this case, is that there really was no evidence presented by Ms. Kerbin, despite bearing the burden of proving a disability at step three, that would show that she met one of the listings. These listings are very hard to beat, it's a high threshold, and there was no evidence here that she met one. And I think tellingly, she herself did not challenge the ALJ's step three finding in the district court, and she did not, even in this court, she does not present, point to any particular listings that she thinks were met. And then with respect to the other reason the district court gave for rejecting the step three findings, there was nothing, there was no problem, or the ALJ did not, or the ALJ did not violate regulation 1529 D3. That regulation really does not come into play here, all that requires, all it says is it provides guidance to the ALJs to say, in cases where you're considering all the you do not, you cannot substitute a claim in symptoms where there's absent medical evidence. And here, clearly there was no evidence presented by Ms. Kerbin, as I mentioned, that would support a finding, there was no objective medical evidence that would support a finding that she met one of the listings, and as I noted, she didn't even challenge the ALJs, the ALJ's step three analysis. So really that regulation really didn't even come into play, and it's really quite remarkable for the district court to remand, or to reverse on a step three finding, where there was no evidence presented that would suggest that she met that step. And on the final point, and actually the focus of Pelley's brief here, not an issue that the district court reached, but the question of whether the credibility assessment that the ALJ provided, and the RFC assessment that he performed, those were both supported by substantial evidence and should be affirmed. Here the ALJ relied on a broad range of factors in concluding that Ms. Kerbin did not, or that her allegations of her symptoms were not credible, and that she possessed the residual functional capacity to continue working. He relied on her, obviously the lack of objective medical evidence, he relied on the fact that she had worked for many years despite her sleep disorder. I believe she said she had the disorder from 94 and 95 at the hearing, and yet she continued to work through 2009. He relied on the fact that her medications demonstrated that her impairments were well controlled. He relied on her daily activities, here it's a case where her main impairment, her most severe impairment, was a vision impairment, but yet she testified that she drove under most conditions, and continued to drive regularly. He also relied on the state agency physicians who found that she was not disabled in any way, and also her daily activities and the fact that she applied for unemployment insurance. All relevant factors, and as in cases like Seidler and Pepper, where we see the court affirming where an ALJ relies on a broad range of factors. At some point she went into this, it wasn't actually a nursing home, but it was some kind of assisted living place, is that what it was? Yes, Your Honor, she does live in a senior... When did that occur? I actually, I'm not sure when that occurred. It was certainly something the ALJ, it was before the ALJ hearing. Well I mean, I know that, but what about, was it before 2009, or during 2009, or afterward? Because that's the deadline on her disability, right? She alleges an onset date of 2009, the actual deadline is 2013, would be the last day, December of 2013. So I just was curious of whether she was in there before or after the onset date. I know she was divorced in the middle of 2009. I don't know the exact date. She was what? She was divorced, so she was not living... Oh, I see, so that caused the move, I guess? I'm not sure, Your Honor, I can't speak to, I can check that and bring it up on the level, but I would just point out there is no evidence that she moved to the facility due to any medical need. So if this court has no further questions... Thank you, Senator Seidler. Mr. Schultz? If it pleases the Court, Your Honors, Barry Schultz on behalf of the Plaintiff Appellee. You're usually over there. I am usually over there. I sat on that side of the room when I first came in, so a little disoriented. The Commissioner's primary argument in this case was really that the administrative law, the reasoning that the District Court gave was improper. But even if it was improper, the plaintiff asserts that the remand, the conclusion of the District Court that the matter should be remanded was proper. What the Commissioner largely ignores is the fact that if Ms. Curvin, who was 58 years old at the time of the ALJ's decision, was unable to perform medium exertional work, what's called medium exertional work, which means being able to lift 50 pounds, lift and carry 25 pounds for two-thirds of a work day, frequently stoop, be on her feet for at least six out of eight hours, then she'd be found disabled based on the medical vocational guidelines. So in this case, the residual functional capacity determination by the administrative law judge was critical. But the ALJ actually provides no basis for finding that the combination of Ms. Curvin's impairments would cause no exertional limitations, which is what he found. So according to the ALJ's decision, Ms. Curvin actually could lift 100 pounds, even very heavy work, which is 150 pounds during the work day. But even someone with mild arthritis in the knee, who's taking Tylenol-3 because of the pain she's experiencing, may not be able to be on her feet all day lifting and carrying. And the evidence that Ms. Curvin provided was that she had problems standing and walking. She provided a specific limitation for standing, I think she said 30 minutes. She also indicated on her forms that she had problems lifting, although there was no specific limitation. But even if the court were to find that the ALJ's credibility determination was supported that he could find Ms. Curvin not fully credible, there still has to be some basis for the functional capacity assessment. We cite it to the Thomas versus Colvin case in our brief, where this court found that the ALJ only considered the impairments seriatim individually, but never combined. And the ALJ did, there's the same problem here with the ALJ's decision. Contrary to what the commissioner states and what the ALJ found, Ms. Curvin's sleep disorder was not controlled. There's no evidence that it was controlled. She was on medication in order to sleep, and the testimony and the statements in the record consistently noted that even on the medication, she still very often only got four to six hours of sleep at night. And she felt very tired and fatigued the next day, was really unable to function in the mornings on those days where she did not adequately sleep. So her sleep disorder, while the medication helped and sometimes allowed her to get a full night's sleep, she didn't always get a full night's sleep. She had been working with that sleep disorder, right? She had the sleep disorder for many years. She testified that it had gotten worse and that that was the reason that she stopped working at her most recent job, which the ALJ did not take into consideration. Additionally, while the ALJ found the claimant not credible, he did so using that boilerplate language, which although isn't always, certainly isn't always reversible error. I think one of the problems that the district court had here was in looking at the ALJ step two finding, which is at page 16 of the administrative record, the ALJ found that the glaucoma in the right eye was a severe impairment. He then goes on to note the non-severe impairments and says that, quote, there's no objective medical evidence that any of these impairments result in significant work-related limitations. Therefore they are determined to be non-severe impairments, close quote. But that's a legally incorrect analysis because an impairment can't be found to be not severe merely because the objective evidence doesn't fully support what limitations might stem from that impairment. That does require a credibility determination, which is what judge, the district court was referring to. But the question there really is because he found that there was one serious one, the glaucoma in the eye, it moves it all forward as opposed to having to resolve all that in step two. I agree that an ALJ... So it opens the door to go to the next steps. Yeah, plaintiff agrees that the ALJ doesn't have to make a determination on each impairment. Once an ALJ finds one impairment is severe, the ALJ can move on. But in this case, the ALJ actually made a legally incorrect analysis at step two. And the district court was concerned then that that actually infected his analysis at step four because he'd already determined without a credibility finding that all these other impairments were non-severe. And then he goes on to find that they cause absolutely no limitations in the claimant's functioning. But he made those later observations, findings at the later steps, so it wasn't like he didn't have credibility in the rest of the things that he needed to do. Didn't he fulfill all of that, even though you might say he had already prejudged that? Well, that's part of the problem. He did go on and make some comments on the individual impairments, that's correct, and he does make some type of credibility finding later on. But where he then uses that boilerplate language saying the claimant is credible only to the extent that her testimony is consistent with the ALJ's RFC finding, and then he already found that her impairments were non-severe without properly considering her credibility, I think that's what the district court here was concerned with, that he couldn't really tell that the ALJ had done a proper evaluation. I mean, we point out that the district court, I mean, the ALJ says that the claimant had gone to the emergency room several times for arthralgias, which are muscle pains, when really her testimony was she went for cardiac arrhythmia. Now, there isn't medical evidence of that, but the ALJ got that wrong in the decision. And additionally, the ALJ relies on the claimant's daily activities to find her not credible, and yet none of those activities are inconsistent with the limitation to less than medium level of work. She drove occasionally, she lived in a senior living center, so she was living in a small apartment, could take care of her apartment, but none of those things required lifting or standing more than the 30 minutes that she said she could stand. So the ALJ really didn't point to anything that was inconsistent with her testimony that she would have been limited and unable to perform those, the kinds of activities that she would be required to, to be found not disabled. This is, you know, a somewhat unusual case, because often claimants are coming, well, claimant didn't come here because the district court remanded, so often there is substantial objective evidence that perhaps the ALJ may have overturned in cases that come to this court. But here it's more the nuance of the commissioner's own regulations, which say that for a person of Ms. Kervin's age, education and work experience, if she could not perform, again, what's called medium level work, many people would find that work fairly strenuous, lifting 50 pounds and carrying 50 pounds, being on your feet all day lifting 25 pounds, that only if she could perform that work is she not disabled, otherwise under the medical vocational guidelines she is disabled, and the ALJ really doesn't address those issues here. We state in our brief that Social Security Ruling 96-8P requires an ALJ to specifically explain whether or not he accepts or rejects all alleged limitations. But here the claimant doesn't, I mean, the ALJ doesn't even discuss whether or not he's accepting Ms. Kervin's statements that she can only live for 30, excuse me, stand for 30 minutes at a time, or that she does experience some degree of fatigue and feeling drained during the day. He doesn't address any of her specific alleged limits, he just says, well, the objective evidence isn't that strong, and then he goes on to find that there are no limitations. So for those reasons, the plaintiff believes that the ALJ's decision was not supported by substantial evidence, and that the district court's decision should be affirmed. Thank you. Thank you, Mr. Charles. Mr. Sanza? Just a couple of quick points, Your Honors. I think, first of all, it's notable that, really, Appellee does not make much of an effort to defend the district court's rulings on the grounds that the district court ruled, and I think that's telling. With respect to the medium exertional work point, I would just emphasize, as we do in our brief, the residual functional capacity analysis doesn't take account of a person's age or their gender. So it just looks and says, with someone with these particular limitations that is supported by the evidence, what can that person do? And here, as the ALJ walked through, the evidence showed someone who had a very mild knee injury, whose other ailments were controlled besides her glaucoma, were controlled by medication, and that, therefore, someone with that collection, it's not surprising that the ALJ therefore ruled that someone with that collection of impairments could do medium exertional work and could actually do the work that Ms. Kerven had actually performed previously as a personal care worker. On the credibility point, one thing I would note is that the district court itself thought, despite the use of the boilerplate language and so forth, that the credibility assessment would have been affirmed had it been done in the right place, and all the district courts seemed to think was a problem was that the ALJ didn't, at the end of his opinion, cut and paste the credibility determination earlier, and I think that just shows the absurdity of the district court's ruling in that regard. And then finally, I just point out again, and I can't emphasize enough, this case may have been unusual in that even Ms. Kerven's treating physicians didn't opine that she couldn't work, aside from her ophthalmologist, who said she could work eight hours a day, she just was limited with respect to her peripheral vision. So if this court has no further questions, we ask that you reverse the district court. Thank you. Thanks to both counsel. The case is taken under advisement. The court will proceed to the sixth case.